UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                   )
ALITA MACK,                        )
                                   )
       Plaintiff,                 )
                                   )
  v.                               )  Civil Action No. 15-793 (RMC)
                                   )
GEORGETOWN UNIVERSITY,             )
                                   )
       Defendant.                 )
_____)

## MEMORANDUM OPINION

Plaintiff Alita Mack alleges that she suffered discrimination and retaliation by her then-employer Georgetown University in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq*. Defendant Georgetown University moved for summary judgment on November 3, 2016, *see* Mot. [Dkt. 56], and this matter was referred to Magistrate Judge G. Michael Harvey for a Report and Recommendation. *See* November 17, 2016 Minute Order. Ms. Mack filed an opposition to Georgetown's summary judgment motion and multiple erata, *see* Opp'n [Dkt. 71]; Errata 1 [Dkt. 74]; Errata 2 [Dkt. 75], to which Georgetown replied. *See* Reply [Dkt. 82]. Magistrate Judge Harvey proceeded to review the briefing carefully and thoroughly and submitted his Report and Recommendation (R&R) to this Court on August 4, 2017. *See* R&R [Dkt. 87]. Ms. Mack filed a timely objection to the R&R, *see* Objection [Dkt. 88], Georgetown responded, *see* Response [Dkt. 89], and Ms. Mack was granted permission to submit an amended objection. *See* Am. Objection [Dkt. 91].

Upon consideration of the R&R, amended objection, and response, and an independent review of the underlying evidence, the Court will accept in full Magistrate Judge Harvey's Report and Recommendation and grant Georgetown's motion for summary judgment.

1

# I. BACKGROUND

Magistrate Judge Harvey's Report and Recommendation contains a detailed procedural history and factual background section, which the Court adopts and will not repeat in full here. *See* R&R at 5-21.

Ms. Mack was hired by Georgetown as an Executive Assistant in the Department of Public Safety on February 19, 2014. Def. Ex. 9 [Dkt. 57-9] at GU001982. Her supervisor was Georgetown's Chief of Police, Jay Gruber. Def. Ex. 10 [Dkt. 57-10] at GU002602. About four months after Ms. Mack starting work, she submitted a disability accommodation request to Michael Smith, the Director of Affirmative Action Programs at Georgetown. Def. Ex. 13 [Dkt. 57-13] at GU000360-01. Ms. Mack indicated that she had diabetes and requested eleven accommodations including a discrete environment to monitor her blood sugar level, an area to store food and medication, and flexibility to schedule medical appointments. Am. Compl. [Dkt. 14] ¶ 13. The accommodations were agreed upon and put into effect on July 24, 2014 with the completion of an accommodation agreement. Def. Ex. 16 [Dkt. 57-16] at GU002659-61.

Ten days later, Ms. Mack complained of a mildew odor and possible mold in her workspace. Def. Ex. 17 [Dkt. 57-17] at GU002679-81. Georgetown evaluated the space, discovered a mold spot near Ms. Mack's workspace, disinfected the mold, and replaced any stained ceiling tiles. Def. Ex. 18 [Dkt. 57-18] at GU002750. A few days later, Ms. Mack submitted another disability accommodation request form indicating she was suffering from a respiratory illness, which was later identified as rhinitis, and requesting reassignment to a vacant position.[1] Ms. Mack was referred to the Human Resources department and put on temporary

---

[1] "[R]hinitis refers to a heterogeneous group of nasal disorders characterized by [one] or more the following symptoms: sneezing, nasal itching, rhinorrhea, and nasal congestion." Mark S. Dykewicz & Daniel L. Hamilos, *Rhinitis and Sinusitis*, 125 Journal of Allergy and Clinical

paid leave until arrangements could be made to move her workspace to another room. Def. Ex. 25 [Dkt. 57-25] at GU000466; Def. Ex. 26 [58-1] at GU000467. Because Ms. Mack's second accommodation request stemmed from a new disability, she was required to engage with Georgetown and her physicians to develop a new plan under the ADA. For the next few weeks, Georgetown attempted to get more information from Ms. Mack's treating physicians, located a new workspace for Ms. Mack, and conducted additional testing for mold and dust mites. Def. Ex. 28 [Dkt. 58-3] at GU002756-57; Def. Ex. 29 [Dkt. 58-4] at GU002804-05; Def. Ex. 30 [Dkt. 58-5] at GU002991.

Meanwhile, beginning in August 2014, Chief Gruber expressed concerns with Ms. Mack's performance. Ms. Mack met with Chief Gruber on August 4, 2014 and again on August 26, 2014 to discuss his concerns, including her frequent unapproved absences and requests to work from home. Def. Ex. 19 [Dkt. 57-19] at GU00455-56; Def. Ex. 32 [Dkt. 58-7] at GU000599-600.

Ms. Mack continued to request permission to work in a different building or remotely and was informed that the essential functions of her position required her to be in the office. Def. Ex. 34 [Dkt. 58-9] at GU002889-92. On August 28, 2014 Ms. Mack filed a charge with the Equal Employment Opportunity Commission (EEOC) claiming Georgetown discriminated against her by ignoring her requests for accommodation and harassed her in retaliation for asserting her rights. Def. Ex. 41 [Dkt. 58-16] at GU003158-59.

---

Immunology S103, S103–07 (2010). "Allergic rhinitis is the most common type of rhinitis," and can be caused by "proteins and glycoproteins in airborne dust mite fecal particles, cockroach residues, animal danders, molds, and pollens." *Id*. It is often accompanied by allergic conjunctivitis and itching of the ears and throat. *Id*.

3

Over the next two months, Georgetown continued to attempt to work with Ms. Mack and her physicians to determine the necessary accommodations, but Ms. Mack prohibited her physicians from communicating with Georgetown. Def. Ex. 5 [Dkt. 57-5] at KP_0010, KP_0041-42, KP_0050. Chief Gruber's dissatisfaction with Ms. Mack's performance grew and on October 14, 2014 Ms. Mack was suspended for three days "based on [her] continued unacceptable work performance and misconduct regarding tardiness and failure to follow call-in procedures, declining calendar appointments and subsequent untruthfulness, and refusals to meet with [her] supervisor." Def. Ex. 44 [Dkt. 58-19] at GU000809-11.

On October 17, 2014, Ms. Mack requested to be reassigned to a vacant position as a reasonable accommodation under her July 2014 ADA plan. Def. Ex. 50 [Dkt. 58-25] at GU003332. After consulting with Ms. Mack's physician, Georgetown determined that her diabetes (which was the disability at issue in the July 2014 accommodation plan) did not warrant reassignment. Def. Ex. 55 [Dkt. 59-5] at GU003408-09. Georgetown continued to attempt to work with Ms. Mack to provide any requested accommodations and in late November Ms. Mack was placed on unpaid leave while Human Resources searched for a vacant position to which she could be transferred. Def. Ex. 64 [Dkt. 59-14] at GU001789.

On January 29, 2015 Human Resources offered Ms. Mack a position as Recruiting Coordinator in the Cawley Career Education Center and asked for a response by February 2, 2015. Def. Ex. 72 [Dkt. 59-22] at GU003797. Ms. Mack failed to respond and after meeting with her and evaluating other possible positions for which she was qualified, Georgetown again extended an offer to Ms. Mack for a Recruiting Coordinator position and indicated that failure to accept the position by March 5, 2015 would result in her termination.

Def. Ex. 75 [Dkt. 59-25] at GU003839. Ms. Mack failed to respond and on March 6, 2015 Georgetown terminated her employment. Def. Ex. 77 [Dkt. 60-2] at GU003903-04.

Ms. Mack filed a second EEOC charge against Georgetown on March 11, 2015, Am. Compl. at 41, which was ultimately dismissed and Ms. Mack was informed of her right to sue in federal court. *Id*. at 32. Ms. Mack filed the initial complaint in this action on May 29, 2015. Compl. [Dkt. 1].

Ms. Mack's objection also contains proposed undisputed material facts and cites to evidence that was not a part of the record on summary judgment. To the extent those additional facts are necessary to evaluate Ms. Mack's objections they will be described below.

## II. LEGAL STANDARD

### A. Report and Recommendation

Rule 72(b) of the Federal Rules of Civil Procedure sets forth the procedure for review of dispositive motions that have been referred to a magistrate judge for a Report and Recommendation. Following the submission of a Report and Recommendation, any party may file objections to the proposed findings and recommendations and the district judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id*. However, "an objecting party is not permitted to present new initiatives to the district judge, as the district court may review only those issues that the parties have raised in their objections to the Magistrate Judge's report." *Taylor v. District of Columbia*, 205 F. Supp. 3d 75, 79 (D.D.C. 2016) (internal citations omitted). A district court also has the discretion to consider evidence outside the summary judgment record before the magistrate judge. *See* Fed. R. Civ. P. 72(b)(3) ("The district judge may . . . receive further evidence.").

5

## B. Motion for Summary Judgment

Summary judgment should be granted pursuant to Federal Rule of Civil Procedure 56 if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, a court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "[t]he mere existence of a scintilla of evidence" in support of its position. *Id.* at 252.

## III. ANALYSIS

Ms. Mack objects to three specific findings in the Magistrate Judge's Report and Recommendation.

> (1) Plaintiff has failed to establish facts sufficient to allow a reasonable jury to conclude that she would have been capable of performing the essential functions of her job even if she had been granted a reasonable accommodation.
>
> (2) Plaintiff has failed to provide facts sufficient to establish that there was a vacant position for which she was qualified at Georgetown superior to the position that she was ultimately offered for reassignment.
>
> (3) Finally as to her retaliation claim, the allegedly adverse actions that Plaintiff has identified are either too immaterial or insufficiently tied to her engagement in protected activity to support an ADA retaliation claim.

6

Am. Objection at 1-2 (numbers not in original); *see also* R&R at 2. The holdings challenged by Plaintiff encompass the entirety of Magistrate Judge Harvey's Report and Recommendation. The Court will review de novo each conclusion.

**A. Ability to Perform Essential Functions of the Position**

In considering Ms. Mack's claim that Georgetown failed to accommodate her disability by permitting her to work offsite, Magistrate Judge Harvey evaluated whether "no reasonable accommodation could permit [Ms. Mack] to perform the essential functions of her position during the pertinent time period." R&R at 29 (citing *Buie v. Berrien*, 85 F. Supp. 3d 161, 176-77 (D.D.C. 2015)). An essential function is defined by the EEOC as "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1).

> Evidence of whether a particular function is essential includes, but is not limited to:
> 
> (i) The employer's judgment as to which functions are essential;
> 
> (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
> 
> (iii) The amount of time spent on the job performing the function;
> 
> (iv) The consequences of not requiring the incumbent to perform the function;
> 
> (v) The terms of a collective bargaining agreement;
> 
> (vi) The work experience of past incumbents in the job; and/or
> 
> (vii) The current work experience of incumbents in similar jobs.

*Id*. at § 1630.2(n)(3). Ms. Mack objects to the Magistrate Judge's finding that because her presence in the office was deemed necessary by Georgetown, no reasonable accommodation would permit her to perform the essential functions of her position offsite as she requested.

7

In objection, Ms. Mack argues that it "would have been feasible" for her to conduct her essential functions at an offsite location and cites the "University Local Telework Policy," as well as a list of individuals engaged in telework whom she claims were "similarly-situated administrate employees." Am. Objection at 22; *see also* Objection Ex. 8 [Dkt. 88-10].[2] Ms. Mack's statement that she would have been able to perform her duties from an offsite location does not address the undisputed facts regarding the responsibilities and functions of her position. Georgetown submitted the job description for Ms. Mack's position, as well as communications from Ms. Mack's supervisor Chief Gruber, which were accepted by the Magistrate Judge as uncontested and which demonstrated the need for her to be present in the office to conduct her work. *See* Def. Ex. 10 at GU002602; Def. Ex. 35 [Dkt. 58-10] at GU003017. The job description indicates that Ms. Mack was responsible for "working group participation, answering phones/screening calls, . . . order[ing] office supplies, . . . digital and paper filing, faxing, photocopying, . . . and other administrative and clerical responsibilities as needed." Def. Ex. 10 at GU002602. Ms. Mack has offered no evidence to support her argument that she could perform these and the remainder of her duties offsite. Additionally, the existence of a general telework policy at Georgetown—in which individuals with similar job titles to Ms. Mack participate—does not establish that Ms. Mack's position is one that permits teleworking.

---

[2] Much, if not all, of Ms. Mack's arguments and evidence submitted in support of her Objection were not included in the summary judgment record. While the Court "may" consider additional evidence, where no "compelling justification" exists for the failure to present the evidence courts generally decline to consider it. *Chiari v. New York Racing Ass'n Inc.*, 972 F. Supp. 2d 346, 351-52 (E.D.N.Y. 2013). Ms. Mack indicated that she suffered technical difficulties when she was initially submitting her opposition to Georgetown's summary judgment motion, *see* Am. Objection at 4-5, but does not explain why in the ensuing seven months between her submission and the Magistrate Judge's Report and Recommendation she did not submit the documents in hard copy or attempt to resolve her technical issues. Despite finding no compelling reason to consider the additional evidence, even with it the Court finds no merit to Ms. Mack's objections.

Similar, or even identical, job titles do not translate to identical essential functions or responsibilities. It is conceivable that an executive assistant in one branch of the University would be able to conduct their work offsite, while another would not. Ms. Mack's direct supervisor was Jay Gruber, Chief of Police at Georgetown University, whose role could well be specifically focused on university property and require Ms. Mack's presence on-site.

Court's will typically "defer to the employer's judgment as to what functions of a job are essential," and Georgetown has demonstrated that many of the essential functions of Ms. Mack's position required her presence in the office. *Saunders v. Gallagher & Huguely Assocs., Inc.*, 741 F. Supp. 2d 245, 248 (D.D.C. 2010). Therefore, Georgetown did not fail to accommodate Ms. Mack's disability because no reasonable accommodation would have permitted Ms. Mack to perform the essential functions of her position offsite.

### B. Alternative Positions Available for Reassignment

Ms. Mack also objects to the Magistrate Judge's holding that Georgetown did not fail to accommodate her by not transferring her to another position. Specifically, Ms. Mack argues that there was another vacant position available for which she was qualified and the position that was offered to her was not equivalent to her current position. *See* Am. Objection at 25-33. An employee should be accommodated by reassignment to a vacant position if the employee is able to perform the essential functions of the vacant job, with or without reasonable accommodation. *See Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1301 (D.C. Cir. 1998). "The reassignment can only be to an existing, vacant job for which the plaintiff is qualified, and positions to which other employees have a legitimate contractual or seniority right are not considered vacant." *Harris v. Chao*, No. 16-162, 2017 WL 2880827, at *6 (D.D.C. July 6, 2017). It is a plaintiff's burden to demonstrate that "there existed some vacant position to which he or she could have been reassigned." *Id*. at *7; *see also Alston v. WMATA*, 571 F. Supp. 2d 77,

82 (D.D.C. 2008) ("[P]laintiff bears both the burden of production and the burden of persuasion on the question [of] whether a suitable vacancy existed at the time she sought transfer.").

Ms. Mack repeats her argument here that she should have been placed in a Human Resources Analyst position, but, as Magistrate Judge Harvey found, that position "was filled before she and Georgetown could complete the ADA's required interactive process." R&R at 37. The EEOC regulations implementing the ADA explain in the definition of "reasonable accommodation" that the "informal, interactive process . . . should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3). The Human Resources Analyst position identified by Ms. Mack in November of 2014 was filled before Georgetown's Human Resources office completed its evaluation of Ms. Mack's limitations and identified the vacant position for which she was qualified.

Additionally, employers are not required to place an accommodated employee in her preferred position and Ms. Mack has failed to establish that the delay in finding an alternative position was unreasonable. Courts consider numerous factors to determine if a delay was unreasonable, such as "the length of the delay, the reasons for the delay, whether the employer has offered any alternative accommodations while evaluating a particular request, and whether the employer has acted in good faith." *Elzeneiny v. District of Columbia*, 125 F. Supp. 3d 18, 38 (D.D.C. 2015). The record is replete with examples of Georgetown's good faith efforts to find other reasonable accommodations for Ms. Mack, such as alternative office space, repeated cleaning and testing of the relevant offices, and the installation of a special air purifier. *See* R&R at 9-10, 17, 19 (citing Def. Ex. 29 at GU002805; Def. Ex. 30 at GU002990-91; Def. Ex. 59 [Dkt. 59-9] at GU003594; Def. Ex. 72 at GU003797). Additionally, Georgetown

constantly sought to learn the scope of the necessary accommodation by contacting Ms. Mack's treating physicians, but Ms. Mack prevented this communication by instructing her providers not to respond. *See* Def. Ex. 5 at KP_0010, KP_0041-42, KP_0050; Def. Ex. 62 [Dkt. 59-12] at GU003616. The few months delay in offering a new position was not unreasonable when Georgetown demonstrated it was providing other accommodations, actively looking for an appropriate alternative position, and told Ms. Mack that it "may take some time to complete."

For the first time in her current objection, Ms. Mack identifies the position of Institutional Diversity, Equity & Affirmative Action[3] (IDEAA) Executive Assistant as another alternative position for which she was qualified and should have been offered. *See* Am. Objection at 26. Ms. Mack argues that Georgetown should have known that the job was going to become available and that the EEOC includes positions "that the employer knows . . . will become available within a reasonable amount of time" as relevant vacant positions. EEOC Enforcement Guidance, No. 915.002, Oct. 17, 2002, https://www.eeoc.gov/policy/docs/accommodation.html#reassignment (last visited Sept. 15, 2017). The previous IDEAA Executive Assistant submitted his resignation letter on February 23, 2015, the same day that Ms. Mack was given the final opportunity to accept or reject the Recruiting Coordinator position. *See* R&R at 20; Def. Ex. 75 at GU003839. Ms. Mack provides no evidence that would allow the Court to find that anyone involved in her ADA accommodation process was or should have been aware that the IDEAA Executive Assistant position was going to become available or even that they became aware on

---

[3] The Office of Institutional Diversity, Equity & Affirmative Action at Georgetown University focuses on "promot[ing] a deep understanding and appreciation among the diverse members of the University Community." Georgetown University, *Institutional Diversity, Equity & Affirmative Action*, https://ideaa.georgetown.edu/ (last visited Sept. 22, 2017).

11

February 23, 2015. Therefore, Ms. Mack has failed to meet her burden to show that a suitable vacancy existed at the time she refused Georgetown's offer of the Recruiting Coordinator position. The Court will grant Georgetown's motion for summary judgment on the claim that it failed to accommodate Ms. Mack by failing to transfer her to a positon other than Recruiting Coordinator.

### C. Materiality of the Alleged Adverse Actions

Ms. Mack's final objection challenges the Magistrate Judge's determination that she failed to identify adverse actions that were material or sufficiently tied to her protected activity to support her retaliation claim. Despite her objection, Ms. Mack failed to provide additional facts or argument concerning it. It is therefore waived. *See* LCvR 72.3(b) ("The objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for the objection."); *see also Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) (holding that plaintiff's objection to a Report and Recommendation was "not specific enough" to "constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)"). Ms. Mack argues briefly that Chief Gruber was inflexible and "harsh" in response to her requests for accommodation. *See* Am. Objection 33-34. Ms. Mack fails to identify the basis for her objection and this Court agrees with the Magistrate Judge's holding that no reasonable jury could conclude that the alleged threats or "harsh" actions from her supervisor were adverse employment actions. The Court has reviewed Magistrate Judge Harvey's analysis and will accept the Report and Recommendation and grant summary judgment to Georgetown University on Ms. Mack's retaliation claim.

## IV.  CONCLUSION

Accordingly, the Court will accept Magistrate Judge Harvey's Report and Recommendation and grant Georgetown University's Motion for Summary Judgment.  A memorializing Order accompanies this Opinion.

Date: September 27, 2017                                  /s/
                                                                    ROSEMARY M. COLLYER
                                                                    United States District Judge